**OPERATION CLEAN GOVERNMENT,**
Plaintiff,

v.

**The RHODE ISLAND ETHICS COMMISSION and its members, Richard Kirby, James Lynch, Francis Flanagan, Thomas Goldberg, Robin Main, James Murray, Patricia Moran, and George Weavill, individually and in their official capacities as members of the Rhode Island Ethics Commission, Defendants.**

No. C.A. No. 02–406L.

United States District Court,
D. Rhode Island.

April 28, 2004.

Leon A. Blais, Blais & Parent, LLP, Boston, MA, Sara M. Quinn, Quinn & Quinn, Providence, RI, for Plaintiff.

William J. Conley, Jr., East Providence, RI, Michael W. Field, Rebecca Tedford Partington, Attorney General's Office, Providence, RI, Joseph T. Houlihan, Kathleen Managhan, Houlihan & Houlihan, Newport, RI, for Defendant.

## DECISION AND ORDER

LAGUEUX, Senior District Judge.

Before the Court are cross-motions for summary judgment, filed pursuant to Fed. R.Civ.P. 56(c) and (d). Plaintiff, Operation Clean Government ("OCG"), filed the instant complaint against Defendants, Rhode Island Ethics Commission ("RIEC" or "the Commission") and its members, Richard Kirby, James Lynch, Francis Flanagan, Thomas Goldberg, Robin Main, James Murray, Patricia Moran, and George Weavill, alleging that Defendants violated OCG's First and Fourteenth Amendment rights in the context of attempting to enforce the provisions of R.I. Gen. Laws § 36–14–12(d), the so-called Roney Amendment. These claims include Counts 1 and 2, alleging that RIEC violated OCG's First Amendment rights to political speech and to petition the government by scheduling a "penalty hearing" on August 2, 2002 under color of the Roney Amendment; Count 3, seeking a declaratory judgment that the Roney Amendment is facially unconstitutional; Counts 4 and 5, alleging that RIEC violated OCG's Fourteenth Amendment right to procedural due process; and Count 6, alleging that RIEC deprived OCG of its constitutional rights under color of state law, in violation of 42 U.S.C. § 1983.

The State of Rhode Island, filing as an Intervenor, asks this Court for partial summary judgment on Count 3, Plaintiff's declaratory judgment claim, arguing that the Roney amendment is constitutional.

*See* Fed.R.Civ.P. 56(d). Plaintiff OCG has cross-moved for partial summary judgment on Count 3 in its favor. Also, RIEC and its members, Defendants herein, have moved for summary judgment on all Counts pursuant to Fed.R.Civ.P. 56(c). In addition to the arguments raised by Defendants in their motion for summary judgment, RIEC argues that no case or controversy remains pending between the parties, and asks this Court to dismiss all six of Plaintiff's claims as moot.

For the reasons articulated herein, this writer agrees with Defendants that Plaintiff's claims are no longer justiciable, and must be dismissed. The Court dismisses Counts 1, 2, 4, 5, and 6 of Plaintiff's First Amended Complaint as moot. This leaves only Count 3, Plaintiff's declaratory judgment claim. However, because the Court determines that Plaintiff's request for declaratory relief alone is unripe for judicial determination without the supporting context of Plaintiff's other counts, that claim must also be dismissed.

## I. Facts and Procedural History

The substantive facts giving rise to OCG's complaint are uncontested. On or about February 2, 2002, three members of OCG, Robert P. Arruda ("Arruda"), Beverly Clay ("Clay"), and Janice Carlson ("Carlson"), filed a complaint with RIEC alleging that Robert Carl ("Carl"), Director of Administration, violated the state Code of Ethics by chairing a meeting of the Unclassified Pay Plan Board in which a pay raise plan containing a pay raise for himself was discussed, voted on, and approved. This complaint, although filed by Arruda, Clay, and Carlson, was filed on behalf of OCG. Later, on March 12, 2002, the same three members of OCG filed a second complaint with RIEC alleging that John Barrette ("Barrette"), State Court Administrator, also violated the state Code of Ethics by participating in and voting on a pay raise plan containing a pay raise for himself before the Unclassified Pay Plan Board. In addition, Arruda, Clay, and Carlson filed another complaint with RIEC against Carl, alleging that he failed to disclose that he was a member of the Unclassified Pay Plan Board in multiple annual financial statements submitted to RIEC, pursuant to R.I. Gen. Laws. § 36–14–16. These three complaints filed against Carl and Barrette by OCG were catalogued by RIEC as Complaint Nos. 2002–2, 2002–3, and 2002–4.

On June 25, 2002, RIEC held a meeting to review the three complaints described above. Pursuant to RIEC regulations, complainant OCG was not considered a party to the ethics actions filed against Carl and Barrette, and, as a result, OCG received no notice that the meeting would take place, and was not invited to present evidence, argument, or to cross-examine witnesses before the Commission. At the June 25 meeting, RIEC dismissed the three complaints against Carl and Barrette "for failure to state any allegations sufficient to constitute a violation of the provisions of the Rhode Island Code of Ethics." After this dismissal, Respondents Carl and Barrette submitted a motion to RIEC requesting that the Commission make a determination as to whether OCG's three complaints against them were "frivolous, unreasonable and groundless," warranting sanctions under the Roney Amendment, R.I. Gen. Laws § 36–14–12(d). This statute reads:

> [RIEC], upon a finding pursuant to this section that there fails to exist probable cause for a violation of this chapter, shall issue an order dismissing the complaint, and if it finds the complaint to be frivolous, unreasonable, or groundless, the commission shall require the person filing the complaint to pay a civil penalty of not more than five thousand dollars

($5,000), all or part of which may be paid to the subject of the complaint in reimbursement of said subject's reasonable expenses of defense.

R.I. Gen. Laws § 36–14–12(d).

A notice of the RIEC dismissal was sent to OCG, Arruda, Clay, and Carlson on June 26, 2002. The notice included the following paragraph:

In accordance with R.I. Gen. Laws § 36–14–12(d), on August 2, 2002 the Commission will consider Respondent's request for a determination that the Complaint as filed was frivolous, unreasonable and groundless, and require each Complainant and the organization to pay a civil penalty of up to $5,000, to be paid to Respondent in partial reimbursement of Respondent's expense of defense. Any such determination or hearing thereon shall not prejudice Respondent's right to initiate a complaint alleging violation of R.I. Gen. Laws § 36–14–5(k). Please take notice that Respondent's request will be heard by the Commission on Friday, August 2, 2002, at 9:00 a.m., at 40 Fountain Street, 8th Floor, Providence, R.I. 02903.

Plaintiff's First Amended Complaint, ¶ 24.

On August 2, 2002, RIEC met to consider Carl and Barrette's motion that OCG's Complaints Nos.2002–2, 2002–3, and 2002–4 be evaluated to determine whether these complaints were "frivolous, unreasonable, and groundless" as described in § 36–14–12(d). In addition to the motion for sanctions brought by Carl and Barrette, OCG filed multiple additional motions, including motions that certain members of RIEC recuse themselves from the case due to prior dealings with OCG and its members and a motion to abate the proceedings. After a day of motion hearings, RIEC recessed the matter until September 3, 2002.

On September 3, when RIEC reconvened, Respondents Carl and Barrette moved to withdraw their motion for sanctions against OCG, Arruda, Clay, and Carlson with prejudice, stating on the record that they no longer believed that seeking statutory sanctions against the complainants was in their best interest. RIEC granted Carl and Barrette's motion to withdraw their motion for sanctions with prejudice. Once the motion was withdrawn with prejudice, the following exchange occurred on the record:

Mr. Kirby: Okay. That's it.

Mr. Senville: And the matter is dismissed by this committee then with prejudice?

Mr. Conley: As I just said a moment ago, there is nothing substantive before the commission to act on in terms of the original request for sanctions. It has been withdrawn with prejudice so that the respondents cannot bring it again but there is no finding on the substantive matter so it's not a dismissal. The request to withdraw has been granted. There is nothing before the Commission to act upon.

Mr. Kirby: So the case is over.

Mr. Senville: Is the matter dismissed by the Commission against the chairman of Operation Clean Government, Robert Arruda, Janice Carlson and Beverly Clay? That is all I'm seeking a ruling on. If the matter is dismissed, it's dismissed with prejudice.

Mr. Kirby: The matter was withdrawn before we can dismiss it.

Mr. Senville: The matter has been withdrawn by the respondents. I wish to know what the Commission's action is. There is nothing pending and the matter is dismissed, correct?

Mr. Kirby: Correct.

Mr. Conley: The matter is withdrawn with prejudice. It cannot be brought

again. There is nothing pending before the Commission to take any further action on.

*Hearing In re Robert Carl—Complaint 2002–2, John H. Barrette—Complaint 2002–3, Robert Carl—Complaint 2002–4,* Proceedings before the Rhode Island Ethics Commission, Sept. 3, 2002, at 8–10.

On September 16, 2002, thirteen days after this hearing, OCG filed this instant suit here in federal court, alleging that RIEC violated its constitutional rights in attempting to enforce the Roney Amendment against OCG, Arruda, Clay, and Carlson on August 2, 2002 and in failing to give OCG notice of the June 25, 2002 meeting where the initial dismissal took place. OCG also asked for a declaratory judgment that the Roney Amendment is facially unconstitutional. Although OCG acknowledged in its Amended Complaint that Carl and Barrette had withdrawn their motion for sanctions under § 36–14–12(d) with prejudice, OCG argued that the case remained open against OCG because, in the absence of a dismissal or abatement, RIEC's regulations require the Commission to retain jurisdiction over a complaint, even if withdrawn by the complainant. *See* Plaintiff's First Amended Complaint, ¶¶ 32–34. Therefore, OCG alleged that despite the withdrawal, it faced the threat of renewed proceedings against it regarding the Carl and Barrette complaints under § 36–14–12(d).

After OCG instigated this lawsuit, counsel for OCG and RIEC were present on another matter before Judge Stephen Fortunato in the Rhode Island Superior Court for Providence County. On the record before Judge Fortunato, counsel for RIEC assured Plaintiffs that their procedural fears of renewed action against them regarding the Carl and Barrette complaints were baseless, as RIEC considered the matter closed. In addition to these assurances, counsel for RIEC agreed on the record to enter a stipulation of dismissal regarding the Carl and Barrette actions. Following the hearing, counsel for both parties entered into a consent order to this effect, entered by Judge Fortunato on December 17, 2002. This Order reads, in pertinent part:

> On September 3, 2002, the Rhode Island Ethics Commission granted the Respondents' Motion to Withdraw their Motion for Sanctions with prejudice. That action terminated all proceedings in the above-captioned Complaints [Nos. 202–2, 2002–3, and 2002–4] including Respondents' Motion for Sanctions against the Plaintiffs.

> As a result of the Rhode Island Ethics Commission granting Respondents' Motion to Withdraw with prejudice, no proceeding for sanctions is pending against the Plaintiffs; there is no possibility of continued proceedings against Plaintiffs for sanctions in regard to the above-captioned Complaints; and the Rhode Island Ethics Commission has no further jurisdiction over the Plaintiffs in the above-captioned Complaints.

*Arruda v. Rhode Island Ethics Commission,* C.A. No.2002–5270, Order Entered, Fortunato, J., Dec. 17, 2002.

As this Order summarizes, no action is pending in the Commission regarding the Carl and Barrette complaints, as they were dismissed, and the motion for sanctions filed against OCG and its members was withdrawn with prejudice. In addition, by conceding that RIEC does not retain jurisdiction over the Carl and Barrette Complaints, the consent Order removes the threat of § 36–14–12(d) sanctions ever being imposed on OCG, Arruda, Clay, or Carlson for the allegations contained in Complaints 2002–2, 2002–3, and 2002–4.

## II. Mootness

It has often been noted that federal courts do not issue advisory opinions. *Maher v. Hyde,* 272 F.3d 83, 86 (1st Cir. 2001). Rather, the United States Constitution "confines the federal courts' jurisdiction to those claims which embody actual 'cases' or 'controversies.'" *Id.* (citing U.S. Const. art. III, § 2, cl. 1). To be justiciable, an actual case or controversy must exist between the parties at all stages of litigation, not merely on the date the action was first initiated. *Thomas R.W. v. Massachusetts Dep't of Education,* 130 F.3d 477, 479 (1st Cir.1997). If the case and controversy requirement is not satisfied, the matter is moot, and must be dismissed. *Cruz v. Farquharson,* 252 F.3d 530, 533 (1st Cir.2001). A matter is deemed moot "when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." *Id.*

Here, OCG alleges in Counts 1 and 2 that RIEC violated its First Amendment rights to free speech and to petition the government by scheduling the August 2, 2002 hearing to enforce § 36–14–12(d) against OCG for allegations made in the Carl and Barrette Complaints. Counts 4 and 5 allege that RIEC violated OCG's rights to procedural due process in failing to give notice of the initial dismissal hearing held for these Complaints on June 25, 2002, and of "the charges against OCG" in the June 26, 2002 dismissal letter. Count 6 alleges that RIEC's attempt to enforce § 36–14–12(d) on August 2, 2002 constituted a deprivation of its constitutional rights by RIEC under color of state law. In all of these Counts, Plaintiff's claims of constitutional deprivation relate back to the threat of sanctions being imposed by RIEC for the allegations OCG made in the Carl and Barrette Complaints. However, as Defendants point out, no sanctions were imposed for the allegations made in these Complaints, and, as the motion for sanctions was withdrawn with prejudice and a consent Order entered terminating RIEC's jurisdiction over these Complaints, OCG, Arruda, Clay, and Carlson do not face the possibility of renewed action against them based on the assertions contained in Complaint Nos.2002–2, 2002–3, and 2002–4. It was the threat of potential Roney Amendment sanctions on these specific Complaints that gave rise to Plaintiff's constitutional deprivation claims. Because this threat is abated, no live cause of action remains pending between the parties on these Counts. As a result, these claims are moot, and must be dismissed.

One exception to the mootness rule exists. Plaintiff OCG may pursue its cause of action on these Counts if it can show that its cause of action is "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The First Circuit has described this exception to the mootness doctrine as follows:

> In order to qualify for this narrow exception to the mootness doctrine, a plaintiff must show that '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'

*Gulf of Maine Fisherman's Alliance v. Daley,* 292 F.3d 84, 89 (1st Cir.2002) (citing *Weinstein,* 423 U.S. at 149, 96 S.Ct. 347).

Although in this case the "challenged action" did expire before it could be fully litigated due to Carl and Barrette's withdrawal of their motion for § 36–14–12(d) sanctions, Plaintiff OCG cannot show that its cause of action is "capable of repetition, yet evading review." *Weinstein,* 423 U.S.

at 149, 96 S.Ct. 347. Because Carl and Barrette withdrew their joint motion for sanctions with prejudice, and because RIEC consented to an Order stipulating that it has no continuing jurisdiction over the three Complaints at issue, OCG faces no future possibility that it would be subjected to the same action for sanctions based on the allegations made in the Carl and Barrette Complaints. Thus, as there is no reasonable expectation that OCG will be subject to the same action again, Plaintiff's claims fail to satisfy this exception to the mootness doctrine.

It is true that Plaintiff OCG, an organization dedicated to promoting ethics in government, will certainly file complaints with RIEC again in the future if the organization deems it appropriate. However, even if OCG was to again face the threat of § 36–14–12(d) sanctions due to allegations made against a government official in a particular complaint, there is no reason for this Court to believe that such a future cause of action, if it ever occurred, would evade judicial review. If a future ethics complaint were filed by OCG, dismissed for lack of probable cause, and a motion for sanctions was filed against OCG by the subject of the complaint, OCG would have several opportunities to contest the imposition of these sanctions and assert any appropriate arguments, including constitutional deprivation claims, before the sanctions themselves were affirmatively imposed. First OCG would have the right to a hearing before the Commission, much akin to those that took place on August 2 and September 3, 2002, to contest the sanctions. Thereafter, OCG would have a right of appeal to the Rhode Island Superior Court, and also, if unsuccessful, the opportunity to pursue further review via a writ of certiorari to the Rhode Island Supreme Court. If such a hypothetical future case was to occur, these procedural layers ensure that any sanc-

tions imposed under the Roney Amendment would not evade review in the state courts.

Therefore, for the reasons discussed, this Court dismisses Counts 1, 2, 4, 5, and 6 as moot. Now this writer turns to the one remaining cause of action, Count 3, requesting a declaratory judgment that the Roney Amendment is facially unconstitutional.

### III. Ripeness

■■■ The Declaratory Judgment Act, 28 U.S.C. § 2201–2202, allows a federal court to award declaratory relief when an actual case or controversy is present. As the First Circuit observed in *Ernst & Young v. Depositors Economic Protection Corporation*, the Declaratory Judgment Act does not itself confer subject matter jurisdiction, but rather "makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis." 45 F.3d 530, 534 (1st Cir.1995). Because this Act offers litigants "a window of opportunity, not a guarantee of access," the courts ultimately must decide, and have substantial discretion in determining, whether declaratory relief is appropriate in a given action. *Id.* In evaluating whether declaratory relief is warranted, one critical consideration is whether the cause of action is ripe for judicial review. If it is determined that the declaratory judgment action before the court is unripe for judicial determination, there is no alternative but to dismiss the case. *Id.* at 535.

■■■ As the United States Supreme Court noted in *Abbott Labs. v. Gardner*, the ripeness doctrine exists to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681

(1967). Thus, courts should dismiss declaratory judgment claims as unripe unless " 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 205–06 (1st Cir. 2002) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). To determine whether or not a particular declaratory judgment claim is ripe for judicial action, the United States Supreme Court instructs the district courts to examine: (1) "the fitness of the issues for judicial determination," and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507. In discussing these factors, the First Circuit has observed:

> [F]itness typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed, whereas hardship typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties.

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir.1999) (internal quotation marks omitted).

For an action to be ripe, both prongs of this test must be satisfied, although a strong showing on one may compensate for a weaker showing on the other. *Ernst & Young*, 45 F.3d at 535.

A. Fitness

 The concept of ripeness has both constitutional and prudential elements. *See Mangual v. Rotger–Sabat*, 317 F.3d 45, 59 (1st Cir.2003). In considering the concept of "fitness," both of these concerns come into play. The constitutional element of fitness focuses on the prohibi-

tion of advisory opinions, and prevents courts from issuing premature opinions. *Id.* at 59. The prudential concerns emanate from the policy of judicial restraint from the issuance of unnecessary decisions. *McInnis–Misenor v. Maine Medical Center*, 319 F.3d 63, 70 (1st Cir.2003). In addressing these concerns, "[t]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Ernst & Young*, 45 F.3d at 536 (quoting *Massachusetts Ass'n of Afro–American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir.1992)). This question reflects the fact that judicial decisions cannot be based on speculative facts or a hypothetical record. *See id.*

 Here, in its sole surviving claim, OCG asks the Court to issue a declaratory judgment that § 36–14–12(d) is facially unconstitutional. Removing references to OCG's moot cause of action concerning the Carl and Barrette Complaints, OCG's rationale for this claim's continued validity is the group's stated expectation that it will continue to file complaints against Rhode Island government officials with RIEC, and its suspicion that, at some point in the future, RIEC will again attempt to enforce the provisions of the Roney Amendment against it and its officers for future allegations that may or may not be contained therein. At present, however, OCG does not face a motion for Roney Amendment sanctions. Although the Court can conceive of a factual scenario that might potentially lead RIEC to attempt enforcement of § 36–14–12(d) at some future date, this case is not before the Court, and indeed, is dependent on so many different factual contingencies that it may never occur. In the absence of a concrete factual situation placing the facial constitutionality of the Roney Amendment at issue,

this Court is not in a position to determine its validity. Thus, this writer determines that OCG's fitness argument is nonexistent at this juncture.

## B. Hardship

■ Before any conclusion on the issue of ripeness, the Court must also take into account the potential hardship the parties would face if denied resolution of their declaratory judgment claim. The "hardship" prong of this analysis is entirely prudential, focusing on whether denying judgment will create an direct and immediate dilemma for the parties involved. *McInnis–Misenor*, 319 F.3d at 70. The hardship inquiry "encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event." *Id.* Because the Court finds OCG's showing of fitness weak, it must compensate by demonstrating a substantial, cognizable hardship based on its alleged fear of facing future sanctions under § 36–14–12(d). *See Ernst & Young*, 45 F.3d at 536. This hardship must not be a contemplated happening at some unspecified future date, but rather, must be injuring Plaintiff presently.

Here, other than OCG's projection that future enforcement of § 36–14–12(d) against the organization by RIEC could result in sanctions, the costs of defense, and attorneys' fees, OCG has failed to establish any present harm suffered by OCG due to the existence of the Roney Amendment. Although OCG suggests that § 36–14–12(d) has had a chilling effect on the filing of ethics complaints by other entities, OCG has failed to demonstrate that the law has affirmatively impacted OCG's decision to file complaints with the Commission. Indeed, as the State of Rhode Island demonstrates in its brief, OCG has filed a greater number of ethics complaints with the Commission annually since the passage of the Roney Amendment than it did beforehand. *See* Intervenor's Memorandum in Support of Motion for Summary Judgment at 4. The only other present harm OCG suffers is attorneys' fees for contesting the Carl and Barrette Complaints and instigating this lawsuit. However, these fees, incurred by OCG through its own desire to challenge this law in court, do not amount to a hardship stemming from the potential enforcement of § 36–14–12(d) by RIEC in the future. Therefore, the Court concludes that no immediate harm will result from denying judicial review at this juncture, and dismisses Count 3 of Plaintiff's First Amended Complaint as unripe. If OCG is again faced with the threat of Roney Amendment sanctions in a future case or controversy, then that cause of action would provide the appropriate forum for OCG to litigate its declaratory judgment claim.

## IV. Conclusion

For the aforementioned reasons, the Court dismisses all counts of Plaintiff's First Amended Complaint. Counts 1, 2, 4, 5, and 6 are dismissed as moot, and Count 3 is dismissed as unripe. Because of the dismissal, the cross-motions for summary judgment before the Court are also rendered moot, and are therefore denied.

It is so ordered.