N.R. SMITH, Circuit Judge,
concurring in the judgment, joined by RAWLINSON, Circuit Judge:
I concur in the majority’s conclusion that Chapman failed procedurally to demonstrate standing to maintain this action. However, I disagree with the majority’s analysis in reaching its conclusion and believe it expands standing for ADA plaintiffs beyond the constitutional confines of Article III.
I. Standing under the Americans with Disabilities Act of 1990
The Supreme Court has not equivocated regarding the importance of standing within the federal courts. “No principle is more fundamental to the judiciary’s proper role in our system of government than the *956 constitutional limitation of federal-court jurisdiction to actual cases or controversies.” Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). The Article III requirement of standing is “essential and unchanging.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At an irreducible constitutional minimum, an Americans with Disabilities Act of 1990 (“ADA”) plaintiff must establish standing by showing (1) he or she has suffered an “injury in fact;” (2) there is “a causal connection between the injury” and the defendant’s complained-of conduct; and (3) it is likely “that the injury will be redressed by a favorable decision.” Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039 (9th Cir.2008) (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130). Even if a claim satisfies the three elements of standing to sue for past illegal conduct, to sustain standing for injunctive relief, a claimant must also establish a “ ‘real and immediate threat of repeated injury.’ ” Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir.2004) (quoting O’Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
A. Encountered Barriers
In the ADA, Congress created a cause of action for disabled persons who experience discrimination through architectural barriers. 42 U.S.C. § 12101(a)(5). “Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.” Linda R.S. v. Richard D., 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). This principle reflects Congress’s ability to elevate “de facto injuries,” otherwise not actionable at common law, into “legally cognizable injuries.” Lujan, 504 U.S. at 578, 112 S.Ct. 2130. For example, the Civil Rights Act of 1968 elevated an individual’s “personal interest in living in a racially integrated community” to a cognizable legal injury if a private party denied that interest. Id. (citing Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 208-12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972)). However, “broadening of the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.” Id. (quoting Sierra Club v. Morton, 405 U.S. 727, 738, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)) (quotation marks and alteration omitted).
Under the above articulated requirements for standing, I agree fully with the majority’s ultimate holding that:
Chapman leaves the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy when shopping at Pier One. Nor does he identify how any of the alleged violations threatens to deprive him of full and equal access due to his disability if he were to return to the Store, or how any of them deter him from visiting the Store due to his disability.
Maj. Op. at 955. Requiring that an ADA plaintiff plead and prove that a barrier affects him by making access or enjoyment of a facility more difficult for him than for a non-disabled person satisfies Article Ill’s requirement that an injury affect a “plaintiff in a personal and individual way.” Lujan, 504 U.S. at 560 n. 1, 112 S.Ct. 2130. However, I must disagree with the majority’s statement that “[wjhere the [ADAAG defined] barrier is related to the particular plaintiffs disability, ... an encounter with the barrier necessarily injures the plaintiff by depriving him of full and equal enjoyment of the facility.” Maj. Op. at 947 n. 4. In this statement, the majority confuses a *957 cognizable interest with an actual injury to that interest.
To demonstrate that he has suffered an “injury in fact,” a plaintiff must establish an “invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.” Doran, 524 F.3d at 1039 (quoting Lujan, 504 U.S. at 560, 112 S.Ct. 2130). Thus, a plaintiff must allege more than encountering an ADAAG defined barrier in order to establish standing. See Lujan, 504 U.S. at 563, 112 S.Ct. 2130 (“[T]he injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.” (internal quotation marks and citation omitted)); id. at 560 n. 1, 112 S.Ct. 2130 (“By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.”); see also Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (Although Congress may grant a right to bring an action otherwise barred, “the plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.”).
To the extent the majority’s analysis would have allowed Chapman to simply allege a specific encounter with an ADAAG barrier related to his disability to satisfy the injury in fact requirement for standing, it fails to meet the requirement that the encounter “affect[s] the plaintiff in a personal and individual way,” Lujan, 504 U.S. at 560 n. 1, 112 S.Ct. 2130, and is no different than allowing standing for barriers not related to the plaintiffs disability. An encounter with an ADAAG defined barrier that a disabled person does not notice (or that does not affect the individual) is not a “distinct and palpable” injury. See Warth, 422 U.S. at 501, 95 S.Ct. 2197.
The majority correctly points out that a barrier need not “completely preclude the plaintiff from entering or from any use of the facility” to give standing to the plaintiff. Maj. Op. at 947, See Fortyune, 364 F.3d at 1081-82. However, it is important that the encounter with the barrier adversely affect the plaintiff in some way to satisfy the particularized injury requirement for injury in fact. Lujan, 504 U.S. at 578, 112 S.Ct. 2130; Doran, 524 F.3d at 1042 n. 5 (“Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact....” (emphasis added)).
An abstract injury (as suggested by the majority) is not enough. City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). “[Cjlaims of injury that are purely abstract, even if they might be understood to lead to ‘the psychological consequence presumably produced by observation of conduct with which one disagrees,’ do not provide the kind of particular, direct, and concrete injury that is necessary to confer standing....” ASARCO, Inc. v. Kadish, 490 U.S. 605, 616, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (internal citation omitted).
Rather than merely pointing to a violation of the ADAAG, a plaintiff must also point to some type of personalized injury, whether the injury is objective (physical or economic)[1] or subjective (emotional or aesthetic). This requirement is consistent with precedent. For example, in For *958 tyune, the plaintiff who planned to return to the movie theater nevertheless was adversely affected, because he worried about his ability to sit with his wife, as was his right. See 364 F.3d at 1081. Given the language in Fortyune, a barrier’s adverse effect on a plaintiff may encompass frustration, embarrassment, or physical difficulty with a barrier in addition to actually being deterred from entering a facility. Another example of a subjective adverse affect is the aesthetic injury relied upon by environmental plaintiffs to maintain standing. See Sierra Club, 405 U.S. at 734-35, 92 S.Ct. 1361.
The majority misconstrues personalized injury as a solely subjective one that could give rise to “vexatious litigation.”[2] Majority Opinion at 948 n. 5. The majority ignores, however, that in addition to a personalized injury a plaintiff must also plead and prove the other two elements of standing in order to meet the standing requirements. An ADA plaintiff must show his injury is caused by a violation of the objective ADAAG standards and may be redressed by a favorable order from a court. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137 (9th Cir.2002) (“[Defendant’s] noncompliance with [the ADA] has caused [plaintiffs] injury, and an injunction requiring [defendant] to comply with the ADA would redress it.”). Thus, rather than leading to vexatious litigation, this is a higher standard from that announced by the majority.[3]
In fact, the majority’s statement that a simple encounter with a barrier is sufficient to confer standing collapses the injury in fact element of standing with the causation element. If the injury in fact element is an encounter with an ADA non-compliant barrier and the causation element is “noncompliance with [the ADA],” then, in reality, these two elements are now one and the majority has expanded standing under the ADA to render the three part test illusory.
Lastly, to satisfy the requirement for a “real and immediate” threat of repeated injury required by Article III for injunctive relief, a plaintiff must also show an “actual or imminent” injury. Pickern, 293 F.3d at 1138. An actual or imminent injury occurs when a plaintiff has a concrete intent to return to a facility with a barrier which will continue to adversely affect his ability to benefit from or participate in the *959 facility. Id.; see also Fortyune, 364 F.3d at 1081-82. As an alternative basis for an actual injury, this circuit has held that a plaintiff, who does not intend to return to a non-ADA compliant store because he is deterred by a barrier at the store, suffers an ongoing injury, redressable by injunctive relief. Pickern, 293 F.3d at 1138; D’Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036-37 (9th Cir.2008). In Pickem and D’Lil, plaintiffs’ refusal to return to facilities where barriers existed was the injury that satisfied Lujan’s requirement that the plaintiff be affected in a “personal and individual way.” In Fortyune, the personalized, ongoing adverse effect was the inability to sit next to a companion (i.e., enjoy fall benefit of the facility). In either case, an injury in addition to the encounter with the barrier itself satisfied the “actual or imminent” injury requirement for injunctive relief.
Under the above reasoning, the majority’s holding that Chapman failed to identify how any of the alleged violations “deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy” adequately reflects the requirements that an ADA plaintiff must plead and prove to show injury in fact sufficient to maintain standing. To be consistent with the Constitution, injury in fact for standing for injunctive relief under the ADA requires a plaintiff to (1) encounter or have knowledge of a barrier; (2) sufficiently allege that he or she was, at a minimum, adversely affected by the barrier; and (3) sufficiently allege either a concrete plan to return to the facility or that the adverse effect of the barrier deters the plaintiff from returning to the facility. To the extent that the majority would allow a simple encounter with an ADAAG barrier that does not “deprive” a plaintiff “of the same full and equal access” that a non-disabled person would enjoy at a facility to confer standing, it exceeds the confines of Article III and impermissibly allows plaintiffs to sue on behalf of others, rather then themselves.
B. Unencountered Barriers
Once standing based on encountering one barrier is established, “[tjhere remains a question ... about the scope of barriers that [a plaintiff] may challenge.” Doran, 524 F.3d at 1042. Expanding on the “deterrent effect” doctrine, Doran held that, once a plaintiff establishes that he encountered a barrier which deterred him from use and enjoyment of the facility, that plaintiff could then send an expert into the store to discover other ADA violations. 524 F.3d at 1043-44. The plaintiff was then deemed to have standing to challenge all discovered violations affecting his or her disability. Id. Doran reasoned:
Given that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty, it is prudent to eliminate that uncertainty through the judicial device of discovery, thus allowing the plaintiff to obtain by formal means the information about the scope of the defendant’s violations that he may have been unable to safely ascertain himself because of those same violations.
Id. at 1043. Doran justified the constitutionality of this rule by stating “we have been instructed to take a broad view of Article III standing in civil rights cases where private rights of action are the primary means of enforcing the statute.” Id. Doran concluded that the “list of barriers would then in total constitute the factual underpinnings of a single legal injury ... [that] actually harmed the disabled person by deterring that disabled person from visiting a facility....” Id. at 1044. In other words, when a plaintiff is deterred from entering a facility because of non-ADA compliant barriers, all the barriers existing at the facility (known and un *960 known) can be construed as one injury of deterrence. Our holding in Doran reflects the necessity of deterrence:
An ADA plaintiff who has encountered or has personal knowledge of at least one barrier related to his or her disability when he or she files a complaint, and who has been deterred from attempting to gain access to the public accommodation because of that barrier, has suffered an injury in fact for the purpose of Article III. An ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability.
524 F.3d at 1047 (internal citation omitted, emphasis added). When a plaintiff is not deterred from returning to a facility, there is not a unification of barriers into one injury in fact constituting deterrence. Thus, there can be no standing to challenge unencountered barriers.
Doran’s reasoning did not require “completely precluding]” a plaintiff from entering a facility in order to satisfy the “imminent” injury necessary for injunctive relief. Instead, the deterrence necessary for standing to challenge unencountered barriers in the context of Doran means, at a minimum, “uncertainty about ... other, potentially dangerous obstacles ... to be encountered when the disabled persons return to the site after the ‘successful’ conclusion of their suit. Such uncertainty is itself an actual, concrete and particularized injury.” 524 F.3d at 1043. This uncertainty ensures that the plaintiff is not asking for an injunction based solely on past injuries, but is continuing to suffer the ongoing injury of deterrence.
By not requiring deterrence before a plaintiff can conduct discovery to find barriers, the majority seeks to allow an ADA plaintiff to represent similarly situated plaintiffs, regardless of whether he would be injured (adversely affected) by the challenged barrier. Because Chapman repeatedly disavowed any deterrence resulted from the barriers he encountered, he experienced no unified injury and had no basis to challenge all unencountered barriers at Pier 1.
Not only does such an expansion of standing violate the constitutional aspects of standing, as discussed above, but it also violates the prudential aspects of standing. In Doran, we recognized the “question regarding the breadth of [an ADA plaintiffs] right to sue also implicates the prudential aspects of the standing doctrine.” 524 F.3d at 1044 (citing Bennett v. Spear, 520 U.S. 154, 164, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)). Prudential standing limits federal jurisdiction, including “the general prohibition on a litigant’s raising another person’s legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked.” Id. (quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Allowing a plaintiff to challenge barriers which never affected him in the past, which he had never considered at the time of filing the complaint, and of which he could easily learn by returning to a store (that he is not deterred from frequenting), runs afoul of the prudential principles against generalized grievances.
As our sister circuit has explained, “[t]he ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people’s injuries.” McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 69 (1st Cir.2003); see also Raines v. Byrd, 521 U.S. 811, 820, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (“[W]e must put *961 aside the natural urge to proceed directly to the merits of this important dispute and to ‘settle’ it for the sake of convenience and efficiency. Instead, we must carefully inquire as to whether appellees have met their burden of establishing that their claimed injury is personal, particularized, concrete, and otherwise judicially cognizable.”).
Therefore, as the prior panel outlined, Chapman did not have standing as to unencountered barriers, because he was not deterred from returning to Pier 1. The lack of deterrence defeats Doran’s justification for allowing unencountered barriers to be considered as one injury and allows Chapman to bring what amounts to generalized grievances against Pier 1.

. Physical or economic injuries, of course, have long been recognized as generally sufficient to maintain injury in fact. See Ass’n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

. In addition, the majority attempts to fault the concurrence for articulating a different standard than that recognized by the three-judge panel, on which he sat. Confined by the holding of another three-judge panel in Doran, the original panel also held that it was "clear” Chapman had standing to challenge the ADA barriers that he "claimed to have encountered” without analyzing whether he claimed that he was harmed by the barriers. See Chapman v. Pier 1 Imports, Inc., 571 F.3d 853, 857 (9th Cir.2009). While the original panel was confined by Doran, an era banc panel need not be constrained by such precedent. See Upton v. C.I.R., 283 F.2d 716, 723 (9th Cir.1960). Regardless of whether Chapman encountered barriers, the court should be required to analyze whether Chapman has alleged or shown that the barriers actually adversely affected him.

. It is true that the vast majority of plaintiffs will believe that they have been adversely affected by a barrier that is noncompliant with the ADA. When a plaintiff, however, encounters a barrier, yet believes it has no actual effect on his ability to participate in or benefit from a place of accommodation, then the plaintiff is, in reality, suing on behalf of others and does not have standing. See Valley Forge Christian College v. Am. United for Separation of Church and State, Inc., 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("The federal courts have abjured appeals to their authority which would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders.” (internal quotations and citation omitted)).