# United States Court of Appeals
## For the First Circuit

No. 02-2086

KATHRYN MCINNIS-MISENOR; BRETT MISENOR,

Plaintiffs, Appellants,

v.

MAINE MEDICAL CENTER,

Defendant, Appellee.

APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, District Judge]

Before

Boudin, Chief Judge,

Torruella and Lynch, Circuit Judges.

Deirdre M. Smith, with whom was Drummond Woodsum & MacMahon on the brief for appellants.

William J. Kayatta, Jr., with whom were Margaret Coughlin LePage, Joanne H. Pearson and Pierce Atwood on the brief for appellee.

February 11, 2003

**LYNCH**, **Circuit Judge**. Kathryn McInnis-Misenor, age 43, suffers from juvenile rheumatoid arthritis and uses a wheelchair. She and her husband are attempting to have a second child, but she is not yet pregnant. Anticipating that she will become pregnant, they brought suit in federal court in October 2001. The complaint, as amended in March 2002, alleged that the Maine Medical Center ("MMC") was in violation of the architectural barrier provisions of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182 (2000), and the Maine Human Rights Act, Me. Rev. Stat. Ann. tit. 5, § 4592 (West 2002). They seek an injunction to force MMC -- the nearest hospital that handles high risk deliveries (as hers would be) -- to move walls in the Family Center to make the bathrooms wheelchair-accessible. The Family Center is an after-birth recovery area of rooms usually used, when available, by newly delivered mothers. If such rooms are not available, the mothers remain in the newer Birth Center rooms, in a different wing of MMC, where the delivery actually takes place.

McInnis-Misenor has reason for concern about her access to the Family Center. She gave birth to her first child at MMC in November 1999. At that time, MMC spent $5,300 to reconfigure a private room in the Birth Center to make it available to her. Due to complications associated with her giving birth, she was unable to transfer to the Family Center and remained in the Birth Center for the duration of her recovery. Even if she had not suffered

those complications, moving her to the Family Center was not a viable option because no room in that wing had toilet and shower facilities configured to be wheelchair-accessible.

In April 2000, McInnis-Misenor filed a complaint with the Maine Human Rights Commission alleging violations of the Maine Human Rights Act, based on her November 1999 experience. The Commission investigated and issued a report, which we shall refer to later, and which the district court considered. Among the claims made to the Commission was that MMC failed to remove architectural barriers in the Family Center.

A magistrate judge, acting on MMC's Rule 12(b)(6) motion, recommended that the action be dismissed because the plaintiffs did not at present have standing to bring their claims. McInnis-Misenor v. Me. Med. Ctr., 211 F. Supp. 2d 256, 257 (D. Me. 2002). The district judge agreed and dismissed the action, without prejudice, on July 30, 2002. Plaintiffs appeal.

I.

Our review of the decision to dismiss for lack of standing is de novo. Mangual v. Rotger-Sabat, No. 02-1669, 2003 U.S. App. LEXIS 857, at *14 (1st Cir. Jan. 21, 2003).

Normally on a Rule 12(b)(6) motion to dismiss, only the complaint is reviewed. However, where standing is at issue, it is within the trial court's power to allow or to require the plaintiff to provide by affidavit or amended complaint "further

-3-

particularized allegations of fact deemed supportive of plaintiff's standing."  Warth v. Seldin, 422 U.S. 490, 501 (1975).  Here the district court also considered the Commission Report.[1]

The party invoking federal jurisdiction bears the burden to establish standing.  Bennett v. Spear, 520 U.S. 154, 167-68 (1997). The plaintiffs initially argue that the district court erred in not taking all factual inferences from the complaint in their favor, as is required on a Rule 12(b)(6) motion.  The argument is misplaced.  We and the district court both have assumed it to be true that McInnis-Misenor is disabled, that plaintiffs are attempting to have another child, that they will use MMC (a place of public accommodation) for any delivery, and that at present the Family Center cannot accommodate her.  But Rule 12(b)(6) does not require we make the inferences necessary to establish that there is federal jurisdiction.

II.

A.  Standing: Constitutional and Prudential

Federal courts are confined by Article III of the Constitution to deciding only actual cases or controversies.  Allen v. Wright, 468 U.S. 737, 750 (1984).  Federal courts can only decide a "live grievance."  Am. Postal Workers Union v. Frank, 968

---

[1]    The Commission Report is an official public record and for that reason could be considered by the court in deciding a Rule (12)(b)(6) motion.  See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).

F.2d 1373, 1374 (1st Cir. 1992) (quoting Golden v. Zwickler, 394 U.S. 103, 110 (1969)).  Standing is thus a threshold question in every case, requiring the court to determine "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant [] invocation of federal-court jurisdiction."  See Warth, 422 U.S. at 498-99 (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  The constitutional standing inquiry has three elements.  A litigant bears the burden of showing "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision."  See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (internal quotations omitted).  As this court has noted, "Article III standing is largely -- albeit not entirely -- a practical jurisprudence."  N.H. Hemp Council, Inc. v. Marshall, 203 F.3d 1, 4 (1st Cir. 2000) (citing 13 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice & Procedure § 3531.1, at 352, 355-56, 362-63 (2d ed. 1984)).

The plaintiffs' claim here involves a threat of future injury.[2]  The parties dispute the degree of threat presented by

---

[2] While plaintiff pursues a state law claim for damages arising from her 1999 hospitalization, the ADA precludes her from seeking damages in architectural barrier claims unless the Attorney General assumes the case.  42 U.S.C. § 12188(b).  Further, as a factual matter, a claim based on the 1999 events suffers from a

these facts to the plaintiffs' legal interests.  Plaintiffs must show that the threatened injury is impending and concrete, see Valley Forge, 454 U.S. at 472, sufficient to constitute "injury in fact."  There must be some immediacy or imminence to the threatened injury.  See Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983); see also Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)(quoting Lyons, 461 U.S. at 101-02).

The standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  Warth, 422 U.S. at 498; see also Barrows v. Jackson, 346 U.S. 249, 255-56 (1953) (describing Court's "complementary rule of self-restraint for its own governance" that exists alongside constitutional restriction on jurisdiction).  Federal courts have identified a number of prudential concerns regarding the proper exercise of federal jurisdiction.  Three of these areas are well-established: (1) the complaint must "fall within the zone of interests protected by the law invoked"; (2) the plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"; and (3) the suit must present more than "abstract questions of wide public significance which amount to generalized grievances, pervasively shared and most appropriately addressed in

_____

causation problem:  she was too sick to move to the Family Center in any case.  As a result, it is only the prospect of future injury which is at issue here.

-6-

the representative branches." <u>N.H. Right to Life Political Action Comm.</u> v. <u>Gardner</u>, 99 F.3d 8, 15 (1st Cir. 1996) (quoting <u>Allen</u>, 468 U.S. at 751; <u>Warth</u>, 422 U.S. at 499; <u>Valley Forge</u>, 454 U.S. at 475); <u>see also</u> <u>Adams</u> v. <u>Watson</u>, 10 F.3d 915, 918 n.7 (1st Cir. 1993); <u>United States</u> v. <u>AVX Corp.</u>, 962 F.2d 108, 114 (1st Cir. 1992).

Prudential standing concerns, unlike constitutional ones, can be abrogated by an act of Congress. "Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules." <u>Warth</u>, 422 U.S. at 501. We start with the language of the ADA. The enforcement provisions of Title III of the ADA are set forth in § 308, which provides:

> The remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000a-3(a)) are the remedies and procedures this title provides to any person who is being subjected to discrimination on the basis of disability in violation of this title or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 303. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions.

42 U.S.C. § 12188(a)(1). McInnis-Misenor is not "being subjected to discrimination," so her claim must rest on whether she "has reasonable grounds for believing [she] is about to be subjected to discrimination." The statutory language "about to be subjected to discrimination" dovetails with the usual prudential analysis as to whether McInnis-Misenor's claims are too contingent and premature.

-7-

McInnis-Misenor cites some ADA cases to us, all factually distinguishable.  This is not, for example, a case in which the existence of architectural barriers is the only reason the ADA plaintiff has not returned for services.  E.g., Parr v. L&L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1079-80 (D. Hi. 2000) (finding standing for a plaintiff prevented from using fast food chain restaurant due to various architectural barriers because of his sincere intent to return as evidenced by his past patronage and taste for the chain's food).  The ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries.

The statutory requirement that plaintiff must have reasonable grounds to believe she "is about to be subjected to discrimination" does not, in our view, displace the normal background prudential standing limitations.  See Bennett, 520 U.S. at 163 ("Congress legislates against the background of our prudential standing doctrine, which applies unless it is expressly negated."); cf. Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973) (noting that while Congress may not confer jurisdiction to render advisory opinions, Congress does have the power to enact statutes expanding standing through the creation of new legal rights).

B.  Ripeness: Constitutional and Prudential

In general, standing and ripeness inquiries overlap. See 13A Wright, Miller & Cooper, supra, § 3531.12, at 51 ("The most direct connections [among justiciability doctrines] run between standing and ripeness."); see also Warth, 422 U.S. at 499 n.10 ("The standing question thus bears close affinity to questions of ripeness -- whether the harm asserted has matured sufficiently to warrant judicial intervention . . . ."). The overlap is most apparent in cases that deny standing because an anticipated injury is too remote, for example. 13A Wright, Miller & Cooper, supra, § 3531.12, at 51. Ripeness, standing, and mootness[3] are closely linked:

> Ripeness and mootness easily could be seen as the time dimensions of standing. Each assumes that an asserted injury would be adequate; ripeness then asks whether an injury that has not yet happened is sufficiently likely to happen, and mootness asks whether an injury that has happened is too far beyond a useful remedy.

Id. at 50. Ripeness, however, can be thought of as focusing on the "when" of litigation, as opposed to the "who." See E. Chemerinsky, Federal Jurisdiction § 2.4.1, at 114 (3d ed. 1999). Even if

---

[3] While mootness in general is irrelevant to the case at hand -- as McInnis-Misenor complains of future injuries, not past ones -- an interest protected by one aspect of mootness analysis might be thought to be pertinent here: the "capable of repetition, yet evading review" exception. See S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911). Because some injuries occur and are over so quickly that they will always be moot before federal litigation is complete, such injuries are deemed an exception to the ordinary mootness doctrine. See E. Chemerinsky, Federal Jurisdiction § 2.5.3, at 132 (3d ed. 1999).

-9-

plaintiffs were the appropriate "who," the question of "when" remains.

The test to be applied in ripeness analysis is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972). The ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967). Determining ripeness involves a dual inquiry: evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149. Both prongs of the test must be satisfied, although a strong showing on one may compensate for a weak one on the other. See Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995). Like standing, ripeness has both constitutional and prudential elements. See Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993); 13A Wright, Miller & Cooper, supra, § 3532.1, at 118.

In the fitness inquiry, both constitutional and prudential concerns operate, with prudential concerns focusing on the policy of judicial restraint from unnecessary decisions. The fitness inquiry "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the

-10-

challenge depends on facts that may not yet be sufficiently developed." Stern v. U.S. Dist. Court, 214 F.3d 4, 10 (1st Cir. 2000) (quoting Ernst & Young, 45 F.3d at 535). "The critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young, 45 F.3d at 536 (quoting Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992)). The fact that an event has not occurred can be counterbalanced in this analysis by the fact that a case turns on legal issues "not likely to be significantly affected by further factual development." Ernst & Young, 45 F.3d at 536.

The second prong -- hardship -- is entirely prudential. The hardship prong evaluates "the extent to which withholding judgment will impose hardship -- an inquiry that typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties." Stern, 214 F.3d at 10 (quoting Abbott Labs., 387 U.S. at 152). The greater the hardship, the more likely a court will be to find ripeness. Ernst & Young, 45 F.3d at 536. This inquiry encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event. See Reg'l Rail Reorganiz. Act Cases, 419 U.S. 102, 143 n.29 (1974); 1 L. Tribe, American Constitutional Law § 3-10, at 337 (3d ed. 2000); see also Larson v. Valente, 456 U.S. 228, 242-43 (1982) (assessing

under standing both the injury to the church from compliance with a challenged registration statute and the burden on the state of demonstrating that the church is not a religious organization).

### III.

We consider the constitutional standing issue to be a close one. Plaintiffs here are better situated than those in Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992), who argued the injury could some day occur, or the plaintiff in Lyons, 461 U.S. at 98, who argued that, having been once placed in a choke hold by police when arrested, he might well be again. Within the Article III standing cases, there is considerable language about not recognizing standing where "hypothetical," "speculative," or "conjectural" injury is at issue. See, e.g., Lujan, 504 U.S. at 560; Lyons, 461 U.S. at 101-02. Calling McInnis-Misenor's possible injuries 'hypothetical' is, in a sense, inaccurate; it is clear already what the nature of the claim is, the contours of the threatened injury, that the injury would be traced to challenged action, and that the injury is redressable by a court. See Valley Forge, 454 U.S. at 471.

This is not a situation of a litigant "pressing solely abstract concerns founded on ill-defined facts, creating a danger that a judicial pronouncement would constitute a prohibited 'advisory opinion.'" 1 Tribe, supra, § 3-14, at 388. Plaintiffs'

-12-

concern is not solely abstract, given her experiences at MMC in 1999; nor are the facts ill-defined.

Nor is the standing issue in this case clearly resolved by the precedent set by the cases relied upon by MMC that reject claims to standing to challenge restrictions on abortion based on potential pregnancy. See Roe v. Wade, 410 U.S. 113, 121 (1973); Abele v. Markle, 452 F.2d 1121, 1124-25 (2d Cir. 1971); Crossen v. Breckenridge, 446 F.2d 833, 839 (6th Cir. 1971); Akron Ctr. for Reproductive Health v. Rosen, 633 F. Supp. 1123, 1128 (N.D. Ohio 1986). There is an important difference in the level of imminence between the risk of an unhoped-for and actively avoided pregnancy (which might or might not lead to seeking an abortion) and an actively sought-after and planned-for pregnancy. It is, however, also true that the time frame to obtain an abortion is shorter. We decline to embrace a per se rule barring all claims to standing based on potential pregnancy whatever the nature of the cause of action. Given the difficulty of predicting all the possible claims that might arise in the context of pregnancy, we cannot say that standing can never be based on potential pregnancy.

In the end, we do not decide the more difficult question of whether constitutional standing is present, because we think the case may be resolved based on the prudential aspects of the standing and ripeness doctrines. As noted above, ripeness and standing overlap in many ways; for purposes of analysis here, the

cases dealing with ripeness present a closer fit.  Both analyses are concerned with fitness for review and hardship.

A.  Fitness

In several ways, this is a simple case, and arguably fit for determination.  The legal issues are relatively straightforward.  Plaintiffs' complaint asserts, at paragraphs 22 and 23:

> Removal of the barrier in the Family Center to permit use by Mrs. McInnis-Misenor and other people who use wheelchairs would be readily achievable for MMC within the meaning of 42 U.S.C. § 12181(9) and 5 M.R.S.A. § 4592 in light of:
> a.    The nature and cost of the barrier removal;
> b.    MMC's overall financial resources, number of employees and the effect of the barrier removal on MMC's expenses and resources; and
> c.    MMC's type of operation.
> Unless Defendant removes the barriers in the Family Center, Plaintiffs and other people who use wheelchairs will continue to be excluded from the Family Center and therefore unable to enjoy the goods, services, facilities, privileges, advantages, and accommodations provided to non-disabled persons who stay in and use the Family Center.

The claims and defenses are well-presented by the Commission Report.

The Commission's Report detailed MMC's position on whether renovating a room in the Family Center was "readily achievable" under 42 U.S.C. § 12181(9).  The Report outlined MMC's revenue for the fiscal year ended September 2000, its expenses, and its capital budget.  It specified that the estimated cost of renovating a patient room and associated bath/shower room was

-14-

$62,000. There would be additional costs from closing that room while renovations were done. If money was spent on this renovation, MMC said, it would have to postpone other ADA physical barrier removals, such as a wheelchair ramp, or cut back elsewhere. MMC also noted that it is a relatively rare occurrence to have a wheelchair-using patient give birth, and there was not another such patient between November 1999 and March 2001. MMC took the position that it would be irrational to spend the money as plaintiffs desired, as the labor and delivery unit has the lowest incidence of use by mobility-impaired patients of any of the in-patient units.[4] The facts at issue are limited in number, and easily discoverable, and this suggests simplicity.

But this simplicity is not enough to create fitness. Even though the legal issues may be clear, a case may still not be fit for review:

> [T]he question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task. Federal courts cannot -- and should not -- spend their scarce resources on what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.

Ernst & Young, 45 F.3d at 537. "[P]remature review not only can involve judges in deciding issues in a context not sufficiently

---

[4] The Commission found that the Family Center renovations proposed by plaintiffs were not required by Maine law.

-15-

concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort."  W.R. Grace & Co. v. United States EPA, 959 F.2d 360, 366 (1st Cir. 1992).  Moreover, this is not a situation in which a decision is "unavoidable," as in Stern.  214 F.3d at 10.  Here, that the future event may never come to pass augurs against a finding of fitness.

The chain of contingencies lying between the plaintiffs' current state and their complained-of future injury bolsters that conclusion.  Like the situation in Ernst & Young, the present case also depends on a chain of contingencies.  In Ernst & Young, the threatened injury was contingent upon a series of eight events which may or may not come to pass, "a long string of contingencies," we found, "so long that [Ernst & Young's] assertion of fitness for judicial review trips over it and falls."  45 F.3d at 538.

Similarly, the present case is one in which the threatened injury is contingent on several events which may or may not happen.  First -- as the magistrate judge recognized -- the keystone is that McInnis-Misenor may or may not become pregnant. Second, there is no way of knowing when, if ever, McInnis-Misenor will become pregnant, and so there is no way of knowing whether MMC will by then have Family Center facilities available to mothers in wheelchairs.  Other contingencies include: if she delivers at MMC

-16-

(as is likely) she may or may not be eligible for transfer to the Family Center; her delivery may pose complications, as last time, which prevent her transfer; and there may or may not be room available at the Family Center on the day she would want to transfer. We do not suggest, however, that these latter conditions alone would defeat standing.

As in Ernst & Young, "the case that [plaintiffs] argue [] is, at this stage, largely hypothetical, and such cases are seldom fit for federal judicial review." Id.

B. Hardship

We consider hardship as well. The plaintiffs' weak showing on the fitness prong means that they must compensate on the hardship prong. The hardship analysis focuses on 'direct and immediate' harm. It is unconcerned with wholly contingent harm. W.R. Grace, 959 F.2d at 367. The plaintiffs contend that they will suffer hardship from withholding of a decision. They argue that they will be unable to present their claims in federal court, have the claims heard, have the court grant them any relief to which they may be entitled, and have the defendants comply with any remedial orders, including the employment of necessary professionals such as carpenters and architects to remove the barrier, all within the limited term of a pregnancy.

We disagree with the plaintiffs' assessment of hardship. There is every reason to think the district court could timely

-17-

resolve a case if McInnis-Misenor becomes pregnant and effectuate a remedy. The legal issues presented by plaintiffs are not complicated. Many of the facts are already presented, or can be discovered readily. Discovery will concern the costs of the architectural changes versus MMC's size and resources, matters all capable of stipulation. We predict trial, if any, would be short and discovery brief. MMC represented that litigation and implementation of any decision could be accomplished within the needed time. The magistrate judge expressed certainty that the trial court could achieve speedy resolution and remedy, and there is no reason to doubt that confidence.[5] We do not find sufficient hardship on the part of the plaintiffs to offset their weak showing on the fitness prong.

In balancing these alternatives, we also must weigh the fact that McInnis-Misenor may never become pregnant, or she may not deliver, or MMC may have a new facility by then and so that the claimed injury may never come to pass. The conditional nature of the claims counseled in favor of the district court refusing to entertain jurisdiction at this point. The prudential reasons alone provide adequate basis to affirm the order dismissing the ADA claim without prejudice.

---

[5]  For the reasons discussed above, while this case may be capable of repetition, it would not evade review, because of the district court's ability to respond to a complaint in a timely fashion. This distinguishes the situation from that in Roe v. Wade, 410 U.S. at 125.

-18-

IV.

We review the dismissal of pendent state law claims for abuse of discretion. United Mine Workers v. Gibbs, 383 U.S. 715, 728 (1966). The plaintiffs' arguments that the district court should not have dismissed the pendent state claims are without merit. When federal claims are dismissed before trial, state claims are normally dismissed as well. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). It is up to plaintiffs whether to file their state claims, as to past actions of the MMC in the 1999 delivery, in the state courts.

V.

The dismissal of the case is **affirmed**. Costs are awarded to MMC.