# United States Court of Appeals
## For the First Circuit

No. 15-1906

LABOR RELATIONS DIVISION OF CONSTRUCTION INDUSTRIES OF
MASSACHUSETTS, INC.; ASSOCIATED GENERAL CONTRACTORS LABOR
RELATIONS DIVISION; BUILDING TRADES EMPLOYERS' ASSOCIATION OF
BOSTON AND EASTERN MASSACHUSETTS; NEW ENGLAND MECHANICAL
CONTRACTORS' ASSOCIATION; NATIONAL ELECTRICAL CONTRACTORS'
ASSOCIATION; PLUMBING-HEATING-COOLING CONTRACTORS' ASSOCIATION
OF GREATER BOSTON; BARLETTA ENGINEERING CORPORATION; CENTURY
DRYWALL, INC.,

Petitioners, Appellants,

v.

MAURA T. HEALEY, in her capacity as Attorney General for the
Commonwealth of Massachusetts,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Thompson and Barron, Circuit Judges,
McConnell,* District Judge.

James F. Grosso and Miranda S. Jones, with whom O'Reilly,
Grosso & Gross, P.C. was on brief, for appellant.
Pierce O. Cray, with whom Maura Healey, Douglas S. Martland,
and the Office of the Massachusetts Attorney General were on brief,
for appellee.

_____

* Of the District of Rhode Island, sitting by designation.

Lindsey Powell, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Carmen M. Ortiz, United States Attorney, Alisa B. Klein, Attorney Appellate Staff, M. Patricia Smith, Solicitor of Labor, Beverly I. Dankowitz, Acting Associate Solicitor, Radine Legum, Counsel for Labor-Management Relations, and Adam R. Pulver, Attorney, Civil Rights and Labor-Management Division, were on brief for amicus curiae United States of America.

MacKenzie Fillow, Senior Counsel, Zachary W. Carter, Corporation Counsel, Jill Maxwell, Of Counsel, Margaret O'Hora, Of Counsel, David Smart, Of Counsel, and Ksenya Hentisz, Of Counsel, on brief for amicus curiae City of New York; Dennis Herrera, City Attorney, and Francesca Gessner, Deputy City Attorney, on brief for amicus curiae City and County of San Francisco; George Jepsen, Attorney General, on brief for amicus curiae State of Connecticut; Ian Warner, Legal Counsel to the Mayor of Seattle, on brief for amicus curiae City of Seattle; Jeremy Farrell, Corporation Counsel, on brief for amicus curiae City of Jersey City; Khalifah L. Shabazz, Corporation Counsel, on brief for amicus curiae City of East Orange; Domenick Stampone, Corporation Counsel, on brief for amicus curiae City of Paterson; and David L. Minchello, Corporation Counsel, on brief for amicus curiae City of Plainfield.

Jasper Groner, Donald J. Siegel, James A.W. Shaw, Louis A. Mandarini, and Segal Roitman, LLP, on brief for amicus curiae Massachusetts AFL-CIO.

Mark A. Gottlieb, on brief for amici curiae A Better Balance, Coalition for Social Justice-Education Fund, Inc., Massachusetts Public Health Association, and the Public Health Advocacy Institute, Northeastern University School of Law.

Ingrid I. Nava, Katherine D. Shea, David B. Rome, and Pyle Rome and Ehrenberg, P.C., on brief for amici curiae SEIU Local 32BJ, 1199 SEIU United Healthcare East, SEIU Local 509, UFCW Local 791, UFCW Local 1445, UFCW Local 328, United Steelworkers Local 8751, and UNITE HERE Local 26.

---

December 16, 2016

---

**BARRON**, **Circuit Judge**.  In this case, a group of construction-industry employers' associations and employers ("employers") seek relief from a broad category of enforcement actions that may be brought under the Massachusetts Earned Sick Time Law ("ESTL"), Mass. Gen. Laws ch. 149, § 148C.  Specifically, the employers contend that the ESTL "is preempted" by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a), "with respect" to those employers in the state who are parties to collective bargaining agreements ("CBAs") with unions.  On that basis, the employers seek a judgment "prohibiting" the Massachusetts Attorney General from "[g]ranting private rights of action to employees who are members of collective bargaining units" and "[e]nforcing civil sanctions pursuant to [the ESTL] against employers who are signatory [sic] to collective bargaining agreements."

The District Court dismissed the suit for failure to state a claim insofar as it constituted a facial, preemption-based challenge to the ESTL, and for want of jurisdiction on ripeness grounds insofar as it represented an as-applied preemption-based challenge to particularized, future actions to enforce the measure.  Due to the claim-specific inquiry that we must undertake in order to determine Section 301's preemptive effect, however, we conclude that the employers' unusual request for sweeping pre-enforcement relief is not ripe for adjudication no matter how it

- 3 -

is best characterized along the facial/as-applied spectrum.  For that reason, we dismiss the suit for want of jurisdiction.

## I.

We start by describing the contours of both the Massachusetts ESTL and federal preemption under Section 301.  We then will be better able to describe the basis for this suit and the District Court's reasons for dismissing it.

## A.

In 2014, voters in Massachusetts overwhelmingly approved the ESTL through the initiative process.  The ESTL broke new ground in Massachusetts by providing that employers of a certain size must compensate their employees for the sick time that they use for specified purposes.  Mass. Gen. Laws ch. 149, §§ 148C(a)-(d).

To ensure compliance with the ESTL, the law provides that the Attorney General "shall enforce [the law] and may obtain injunctive or declaratory relief for this purpose." Id. at § 148C(l).  That same subsection of the ESTL further provides that "[v]iolation of [the ESTL] shall be subject to" various provisions of Massachusetts law that, among other things, permit the imposition of civil penalties.  Id.; see also id. at §§ 27C & 150.

In addition to providing for enforcement by the Attorney General, the ESTL also authorizes an "aggrieved" employee to bring actions under the ESTL, provided that such an employee first files the complaint with the Attorney General to notify her of the

impending suit.  Id. at §§ 148C(l) & 150.  After filing the complaint with the Attorney General, the aggrieved employee must wait ninety days to bring the suit unless the Attorney General permits the employee to file the suit before the ninety-day period has run.  Id.

Finally, the ESTL authorizes the Attorney General to promulgate regulations "to carry out the purpose and provisions" of the law.  Id. at § 148C(n).  The Attorney General exercised that authority on July 3, 2015 by promulgating regulations that defined certain terms in the ESTL, some of which the employers point to in pressing their preemption-based challenge.  940 C.M.R. §§ 33.01-33.11.  Specifically, the ESTL provides that covered employers must compensate their employees for such paid sick time "at the same hourly rate as the employee" would have been paid had the employee not taken leave.  Mass. Gen. Laws ch. 149, § 148C(a). The regulations promulgated by the Attorney General define the "same hourly rate" to mean "the employee's regular hourly rate" for employees paid a uniform hourly rate.  940 C.M.R. § 33.02. For "employees who receive different pay rates for hourly work from the same employer," the regulations permit an employer to use a "blended rate, determined by taking the weighted average of all regular rates of pay over the previous pay period."  Id.

Section 301 of the National Labor Relations Act long pre-dates the ESTL. It was enacted in 1947, and it provides: "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

Notwithstanding its phrasing, Section 301 is "more than jurisdictional -- [] it authorizes federal courts to fashion a body of federal law for the enforcement of [CBAs]." Textile Workers Union v. Lincoln Mills of Ala., 353 U.S. 448, 450-51 (1957). Moreover, soon after Lincoln Mills, the Supreme Court in Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962), explained that, in light of the congressional command in Section 301 to "fashion . . . a body of federal law for the enforcement of [CBAs]," state courts were not "free to apply individualized local rules when called upon to enforce such agreements." Rather, "in enacting § 301[,] Congress intended doctrines of federal labor law uniformly to prevail over inconsistent state rules." Id. at 104.

The result is that Section 301 preempts state-law "suits alleging [CBA] violations." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). There is no shortage of complexities concerning precisely what consequences flow from Section 301

preemption, but we need not delve into all of them here. For present purposes, it suffices to say that, by virtue of Section 301's preemptive effect, a state-law claim for breach of a CBA often must be dismissed so that the claim may be arbitrated in accord with an agreement to arbitrate such a breach that the governing CBA contains. See, e.g., id. at 220-21; see also Lucas Flour, 369 U.S. at 105 (holding that the CBA in that case "expressly imposed upon both parties the duty of submitting the dispute in question to final and binding arbitration"). As the Court has explained, "[t]he need to preserve the effectiveness of arbitration was one of the central reasons that underlay the Court's [preemption] holding in Lucas Flour." Lueck, 471 U.S. at 219.

The Court has also made clear, however, that "[t]he requirements of § 301 as understood in Lucas Flour cannot vary with the name appended to a particular cause of action." Id. at 220. Thus, in Lueck, a claim styled as a "tort claim for breach of a good-faith obligation under a contract" was held preempted under Section 301 -- and thus dismissed -- because the "right[]" the plaintiff asserted was fundamentally "rooted" in the CBA, which had provided that a dispute over the employer's compliance with the predicate right under the CBA was subject to arbitration. Id. at 219-20 (noting that a "rule that permitted an individual to sidestep available grievance procedures would . . . eviscerate a

- 7 -

central tenet of federal labor contract law" -- the primacy of the arbitrator in CBA interpretation). In this way, too, Section 301 preemption ensures that "interpretation of [CBAs] remains firmly in the arbitral realm." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988).

There are limits, though, to Section 301's preemptive reach. The Court has explained that "it would be inconsistent with congressional intent under [Section 301] to preempt state rules that . . . establish rights and obligations, independent of a labor contract." Lueck, 471 U.S. at 212. That is because Section 301 "says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." Lingle, 486 U.S. at 409. Accordingly, "the bare fact that a [CBA] will be consulted in the course of state-law litigation" pursuant to a state-law cause of action that confers a right independently of the CBA is not sufficient, in consequence of Section 301 preemption, to require the dismissal of the state-law cause of action. Livadas v. Bradshaw, 512 U.S. 107, 124 (1994); see also Lueck, 471 U.S. at 211 ("[N]ot every dispute . . . tangentially involving a provision of a [CBA] is preempted by § 301."). For example, when "liability is governed by independent state law, the mere need to 'look to' the [CBA] for damages computation is no reason to hold the state-

law claim defeated by § 301." <u>Livadas</u>, 512 U.S. at 125 (internal citation omitted).[1]

## C.

It is against this legal background that the employers filed this suit in the U.S. District Court for the District of Massachusetts in 2015. The employers did so before any action to enforce the ESTL had been filed against any employer who is a party to a CBA by either the Attorney General or by any aggrieved employee. But the employers contend in the currently operative complaint, which is styled as "Amended Petition for Declaratory

---

[1] Even when Section 301 preempts a state-law claim, there may be different ways of disposing of the claim. <u>Cavallaro</u> v. <u>UMass Mem'l Healthcare, Inc.</u>, 678 F.3d 1, 6 (1st Cir. 2012). "In most cases, a claim that requires interpretation of the applicable CBA is covered by 'a broadly-phrased grievance and arbitration provision in the CBA'" and thus must be sent to arbitration. <u>Rueli</u> v. <u>Baystate Health, Inc.</u>, 835 F.3d 53, 59 (1st Cir. 2016) (quoting <u>Cavallaro</u>, 678 F.3d at 6). But, as the Court has emphasized, "[h]olding the plaintiff's cause of action substantively extinguished may not . . . always be the only means of vindicating the arbitrator's primacy as the bargained-for contract interpreter." <u>Livadas</u>, 512 U.S. at 124 n.18. Thus, we have previously noted some "uncertain[y]" as to "when a state law claim implicating Section 301 should proceed as a federal claim, or simply be dismissed." <u>Pruell</u> v. <u>Caritas Christi</u>, 645 F.3d 81, 85 n.4 (1st Cir. 2011); <u>see also</u> <u>Lingle</u>, 486 U.S. at 403 n.2 (emphasizing that "state courts have concurrent jurisdiction over § 301 claims" (citing <u>Charles Dowd Box Co.</u> v. <u>Courtney</u>, 368 U.S. 502 (1962)))

Relief II," that Section 301 preemption nonetheless entitles them to sweeping relief from the ESTL's eventual enforcement.

Specifically, in that complaint, the employers seek "a judgment declaring that [the ESTL] is preempted with respect to employers who are signatory [sic] to collective bargaining agreements." Second, the employers seek "a judgment prohibiting the Attorney General from: [(1)] Granting private rights of action to employees who are members of collective bargaining units; and [(2)] Enforcing civil sanctions pursuant to [the ESTL] against employers who are signatory [sic] to collective bargaining agreements."

In support of the contention that Section 301 preemption entitles the employers to the relief they seek, the complaint alleges the following facts. First, the complaint asserts that the construction-industry employers and the members of the construction-industry employers' associations that bring this action are parties to CBAs. Next, the complaint alleges that "[a]ny and all state law claims brought under the [ESTL] would require a determination of the 'hourly rate' of a worker covered by a [CBA,] which would necessitate an analysis and interpretation of the terms of the [CBAs] made between the parties in a labor contract." And, finally, quoting subsection (j) of the ESTL, Mass. Gen. Laws ch. 149, § 148C(j), the complaint asserts that the ESTL "further necessitates an analysis and interpretation of the terms

of the [CBAs] made between the parties in a labor contract to determine whether the [ESTL] 'diminishes or impairs the obligations of an employer to comply with any contract, [CBA], or any employment benefit program or plan . . . that provides to employees greater earned sick time rights'" than the ESTL.

The Attorney General responded to the employers' suit in the District Court by moving to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The District Court ruled as follows.

Construing the complaint as a "facial preemption challenge" against the ESTL, the District Court first concluded that the employers would not be able to show that "all claims to benefits under the" ESTL for all unionized workers in the state would depend on CBA interpretation.  Labor Relations Div. v. Healey, Civil Action No. 15-10116-RWZ, 2015 WL 4508646, at *7 (D. Mass. July 9, 2015) (emphasis omitted).  The District Court reasoned that many conceivable ESTL claims brought against employers who are parties to a CBA would not so depend on CBA interpretation -- claims, for instance, involving workers earning a "uniform hourly wage," or claims not involving a wage dispute at all, such as retaliation.  Id.  Thus, the District Court held, the employers' challenge failed the familiar test laid out in United States v. Salerno, 481 U.S. 739, 745 (1987), which requires plaintiffs bringing a facial challenge to a statute to show that

there are no set of circumstances under which that statute would be valid. Id. As a result, the District Court dismissed what it characterized as the employers' facial challenge under Rule 12(b)(6).

The District Court then considered the employers' challenge to the ESTL "as an as-applied challenge" to only those enforcement actions (whether brought by the Attorney General or by employees) that would involve CBA interpretation. Id. at *8-*9. The District Court held, however, that, so understood, the complaint was not ripe for adjudication because, at the time the complaint was filed, "the purported application of the [ESTL] to [the employers] ha[d] been -- at best -- hypothetical." Id. at *9. The District Court emphasized that no employee had, to that point, brought a claim for paid sick time under the ESTL. Id. "Neither," the District Court observed, "ha[d] the Attorney General." Id. On this basis, the District Court concluded that the employers' as-applied challenge "[did] not present" a justiciable case or controversy under the Article III, and therefore the District Court dismissed the case under Rule 12(b)(1) for lack of subject matter jurisdiction. Id.

The employers now appeal.

## II.

Although the Attorney General does not dispute that the suit, if understood to be a facial challenge to the ESTL, is ripe

- 12 -

for adjudication, we are obliged to determine ripeness for ourselves.  See City of Fall River v. FERC, 507 F.3d 1, 6 (1st Cir. 2007) (noting that "the question of ripeness may be considered on a court's own motion" (internal quotation marks and citation omitted)).  And, after doing so, we hold, as the United States contends as amicus, that this case, even if characterized as a facial challenge, is not ripe and thus must be dismissed for lack of jurisdiction.[2]

**A.**

The "'basic rationale' of the ripeness inquiry is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements'" in violation of Article III's case or controversy requirement.  Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)).  As the Supreme Court has put it, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127

---

[2] We also acknowledge the helpful amicus briefs filed by the City of New York, et al., the Massachusetts AFL-CIO, the Public Health Advocacy Institute et al., and SEIU Local 32BJ, et al.

(2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In line with these principles, a claim is ripe only if the party bringing suit can show both that the issues raised are fit for judicial decision at the time the suit is filed and that the party bringing suit will suffer hardship if "court consideration" is withheld. McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (quoting Abbott Labs., 387 U.S. at 149). In considering the fitness prong of the ripeness inquiry, we have emphasized that a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." City of Fall River, 507 F.3d at 6 (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). In a similar vein, we have explained that "[t]he conditional nature of the claims" strongly counsels against a finding of hardship. McInnis-Misenor, 319 F.3d at 73.

The burden to prove ripeness is on the party seeking jurisdiction. See Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 25 (1st Cir. 2007). The pleading standard for satisfying the factual predicates for proving jurisdiction is the same as applies under Rule 12(b)(6) -- that is, the plaintiffs must "state a claim to relief that is plausible on its face." See Román-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 45 n.3, 49 (1st Cir. 2011); Silha v. ACT, Inc., 807 F.3d 169, 174 (7th Cir. 2015)

- 14 -

(collecting cases from other circuits).  In evaluating such claims, we must separate out factual assertions from legal conclusions. As the Court instructed in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Our review for ripeness is de novo.  Riva v. Massachusetts, 61 F.3d 1003, 1007 (1st Cir. 1995) ("[A] trial court's determination on a paper record that the case before it lacks ripeness presents a question of law subject to plenary review.").

**B.**

We start by considering whether the employers' pre-enforcement request for relief against the Attorney General is fit for judicial resolution.  In contending that it is, the employers acknowledge that they seek relief from ESTL actions that have not yet been brought.  But, they contend, Section 301 preemption would block any such suit.[3]  Therefore, the employers contend that there

---

[3] The complaint seeks generally a declaration that the ESTL "is preempted by Section 301."  But, as we have suggested above, preemption in this context is a complex concept with varying consequences.  See Livadas, 512 U.S. at 124 n.18.  The complaint goes on, however, to seek preemption-based relief -- namely, that the Attorney General is "precluded from enforcing" the ESTL or authorizing suit to enforce the ESTL by aggrieved employees.  That request for relief assumes that the consequences of preemption here would be to prevent any such ESTL suit from going to court. All the employers' briefing proceeds on a similar understanding of

is no reason to wait to provide them the relief they seek because, even at this early stage, the case is sufficiently developed to be adjudicated.  We do not agree.[4]

Unlike a typical claim of field preemption, a claim of preemption under Section 301 that is lodged against a suit to enforce a state-law cause of action, such as one granted by a measure like the ESTL, does not involve "purely legal questions, where the matter can be resolved solely on the basis of the state and federal statutes at issue."  Wis. Cent., Ltd. v. Shannon, 539 F.3d 751, 759 (7th Cir. 2008).  Rather, Section 301 preemption can "defeat[]" a claim brought under the ESTL -- and thus support the employers' request for relief in this case -- only if the specific claim that is brought is determined to depend upon the provisions of the CBA.  Livadas, 512 U.S. at 125.  But, as this case comes to

what preemption would entail.  Accordingly, we decide the case on that basis.

[4] We recognize, as the Court has recently explained, that "[t]he doctrines of standing and ripeness 'originate' from the same Article III limitation," and therefore that the ripeness analysis we undertake has commonalities with the injury-in-fact analysis we undertake when considering issues of standing. Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 n.5 (2014) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006)). But, in this case, the parties have reasonably cast the jurisdictional issue as one that implicates ripeness, and, we note, the Seventh Circuit has applied the ripeness inquiry to evaluate Article III jurisdiction in the very similar case of Wisconsin Central, Ltd. v. Shannon, 539 F.3d 751, 759 (7th Cir. 2008).  We follow that same course.

us, it is not sufficiently developed to be fit for such a claim-specific preemption inquiry.

The Seventh Circuit's analysis of ripeness in the quite similar preemption-based challenge presented in Shannon is instructive. 539 F.3d at 759-61. There, the court considered an employer's challenge to a state agency official's possible enforcement of a state overtime law under the Railway Labor Act, which has a preemption provision that operates in the same claim-specific manner as does preemption under Section 301. See Shannon, 539 F.3d at 754-56; see also Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260 (1994). Even in the somewhat more developed state of that case, however, the Seventh Circuit held that the claim was not fit for adjudication because the state agency's investigation had not "progressed to a point where it [could] be determined what dispute, if any, the parties [would] have over the CBAs' terms," Shannon, 539 F.3d at 760, as there are "many scenarios where CBAs may be implicated as part of a state or federal cause of action, but preemption/preclusion of the claim [would be] unnecessary," including situations "where reference to the CBA is only necessary for computing damages," id. at 758.

If anything, the ripeness problem is even more acute here. At this pre-enforcement stage, there is no particular claim that has been identified at all. We thus cannot perform the requisite claim-specific preemption analysis as to any claim that

may be brought, as we have before us only hypothetical ESTL claims, the details of which are not known.

To the extent that the employers contend that no details about a particular ESTL claim need be known because all ESTL claims are necessarily CBA-dependent, that contention is not supported by facts alleged in the complaint. In so concluding, we may take as true the questionable statement in the employers' complaint that "[a]ny and all state law claims brought under the [ESTL] would require a determination of the 'hourly rate' of a worker covered by a [CBA]." But, even if we accept that contention, we do not accept the further assertion in the employers' complaint that all claims brought under the ESTL that require a determination of an employee's hourly rate thereby trigger Section 301 preemption. That contention is one of law, not fact, see Iqbal, 556 U.S. at 679, and it is plainly not sustainable.

For example, as the District Court rightly explained, ESTL enforcement actions may turn on issues concerning "liability" under the ESTL that are entirely independent of any CBA terms that may govern the hourly rate of pay for an employee, Livadas, 512 U.S. at 125, such as whether an employer retaliated against an employee for bringing an ESTL claim or whether an employee took leave for a permissible purpose under the law. See Healey, 2015 WL 4508646, at *7. Because the "liability" portion of the claim in such actions would be "governed by independent state law," there

- 18 -

would be "no reason to hold the state-law claim defeated by § 301" in such cases, even if the need arose to "'look to' the [CBA]" to calculate an employee's hourly rate under the ESTL for the purpose of calculating his "damages." Livadas, 512 U.S. at 125; see also Lingle, 486 U.S. at 413 n.12 (even where "federal law would govern the interpretation of [a CBA] to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand").

Similarly, we may accept as true the questionable allegation in the employers' complaint that all claims to enforce the ESTL on behalf of unionized employees will require a court to "determine whether the [ESTL] 'diminishes or impairs the obligations of an employer to comply with any . . . [CBA] . . . that provides to employees greater earned sick time rights'" than the ESTL. But, even if we do so, it does not follow that ESTL claims brought against the employers will depend upon the CBA. Often, the Attorney General or an aggrieved employee will be seeking relief under the ESTL that is plainly greater than the relief afforded by the CBA. In such a case, liability under the law is still determined by the ESTL and not the CBA, insofar as Section 301 "cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law." Livadas, 512 U.S. at 123. In other words, the "legal character of [such] a claim" is still "'independent' of rights under the [CBA]"

- 19 -

because the question confronting a court concerns whether the employer, notwithstanding the CBA, has violated the ESTL. Id.[5] As a result, the employers seek to have us adjudicate a necessarily fact-dependent dispute about how an ESTL suit would relate to an underlying CBA in advance of us having any actual claims that present the facts that would be relevant to our assessment of that relationship.

To be sure, at some point, some action may be brought under the ESTL against an employer who is a party to a CBA. And such an action may even be brought by an aggrieved employee, who is also a party to that labor agreement.[6] In the event such a suit

---

[5] It would seem likely that the employers would be the ones who would assert that some CBA-created obligation to provide greater benefits than those provided under the ESTL trumps the requirements of the ESTL. But the Court has made clear that a defense based on preemption under Section 301 may not be used to bring the underlying state-law claim into federal court. See Caterpillar Inc. v. Williams, 482 U.S. 386, 398 (1987). For that reason, we question whether a federal court would even have jurisdiction to decide a case arising in this speculative posture.

[6] Of course, the employers do also seek, in substantial part, advance relief from actions that would be brought by the Attorney General rather than by an aggrieved employee. But the Attorney General is not alleged in the employers' complaint to be a party to any CBA and thus would not appear herself to be bound by any CBA terms, including those mandating arbitration of disputes over its meaning. Cf. Waffle House v. EEOC, 534 U.S. 279, 293 (2002) (holding that a private arbitration agreement between an employee and an employer could not bind a nonparty governmental agency, the EEOC, and thus that the agreement -- which was enforceable against the employee under the Federal Arbitration Act -- did not limit the types of remedies the agency could seek in an enforcement action it initiated under Title VII); see also Pruell, 645 F.3d at 83 ("[R]emoval and dismissal based on complete preemption under [Section 301] must start with a plaintiff covered by a CBA . . . ."

is brought, we would know at that time the details of the actual ESTL claim presented. We therefore would be well positioned to assess whether that particular claim -- though predicated on the ESTL -- nevertheless depended on a provision of the governing CBA. And we would then also be able to determine whether, in consequence, the actual claim brought should be dismissed in accord with provisions in that CBA requiring that a dispute over its terms be arbitrated or whether preemption requires instead that the claim be addressed in some other manner. See Roman Catholic Bishop, 724 F.3d at 92 (withholding consideration on ripeness grounds of the plaintiff's challenge to future applications of a city preservation ordinance until the plaintiff "settled upon any plan for future use of the property that would necessarily entail changes to the [c]hurch's exterior" and thus trigger the

---

(emphases in original)). And the employers provide us with no insight into how Section 301 preemption would apply when a state-law claim arguably dependent on CBA interpretation is brought by a CBA nonparty to enforce rights of CBA parties. But, given the other problems that we have identified with finding this case to be fit for resolution at this time and that are present no matter which party brings an ESTL action, we need not decide how or whether Section 301 preemption might apply to an ESTL action brought by the Attorney General herself. We do note, though, that it would surely be better to make any such decision in the context of a real and concrete dispute rather than as to a hypothetical one. See id. at 85 (holding that it would be "unwise, even perhaps inappropriate" to consider whether state-law claims asserted on behalf of a putative class were preempted by Section 301 before learning whether the named plaintiffs were covered by CBAs and thus "whether any CBA [would be] implicated in claims asserted by the named plaintiffs").

- 21 -

application of the ordinance).  But no such suit has been brought, and thus no such claim-specific inquiry can be made.  We are therefore asked to resolve a hypothetical and abstract dispute rather than a real and concrete one.   See McInnis-Misenor, 319 F.3d at 72 (holding that the plaintiff's claim was unripe because it "depends on future events that may never come to pass, or that may not occur in the form forecasted" and thus was "largely hypothetical" (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 537 (1st Cir. 1995))).  Accordingly, we conclude that this case does not satisfy the first prong of the ripeness inquiry, as it is too contingent on as-yet-unknown features of as-yet-unspecified claims to be fit for adjudication at this time.  See id. at 73; see also Shannon, 539 F.3d at 760.

Our analysis under the first prong of the ripeness inquiry also dictates the outcome as to the second prong, which concerns the harm to the parties seeking relief that would come to those parties from our "withholding of a decision" at this time. McInnis-Misenor, 319 F.3d at 73.  Here, too, the analysis "focuses on 'direct and immediate' harm.  It is unconcerned with wholly contingent harm."  Id. (quoting W.R. Grace & Co. v. United States EPA, 959 F.2d 360, 367 (1st Cir. 1992)).  As we have just explained, this case fails to satisfy the first prong because it is contingent on the details of future ESTL claims that are not now known.  For the same reason, the harm to the employers from any delay in having

their case adjudicated is necessarily also contingent.  See Shannon, 539 F.3d at 761 (noting that the case did not present a "circumstance where the [state agency's] investigation and subsequent enforcement of the [s]tate's overtime laws would invariably lead to a finding of preemption," and thus that the hardship the plaintiff alleged -- the "need to defend itself in an enforcement action ultimately [held to be] preempted due to the need for an arbitrator, rather than a court, to interpret [] CBAs" -- would not necessarily come to pass because any enforcement action actually brought by the state agency might not necessarily be preempted).[7]

## III.

Our focus on the claim-specific nature of Section 301 preemption also points the way to our resolution of the final issue

---

[7] The hardship showing is especially uncertain as to any future ESTL claim brought by the Attorney General, even if any such claim were determined to depend upon the interpretation of a provision of the CBA.  After all, because the employers do not allege that the Attorney General is a party to any such CBA, the actual preemptive effect of Section 301 on any such ESTL action is far from clear.  See Waffle House, 534 U.S. at 293; see also Pruell, 645 F.3d at 83.  Nor is the employers' hardship showing appreciably stronger as regards the request for relief against the Attorney General as to her role under the ESTL with respect to actions brought by aggrieved employees.  The Attorney General does not appear to have any role in authorizing such actions beyond permitting them to be filed in court somewhat sooner than otherwise would be allowed by operation of the ESTL itself.  See Mass. Gen. Laws ch. 149, §§ 148C(l) & 150.  Withholding adjudication of this challenge, therefore, at most would appear to permit some as-yet-unfiled lawsuit by an employee -- which may or may not be preempted -- to be brought a few months earlier than it otherwise could be.

that the employers raise.  They contend that the District Court erred in refusing to consider certain CBAs to which some of them are parties and that had been attached to the employers' opposition to the Attorney General's motion to dismiss.  It is true that, "[u]nder certain 'narrow exceptions,'" district courts may consider "some extrinsic documents . . . without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (quoting Watterson v. Page, 987 F.3d 1, 3 (1st Cir. 1993)).  But the only exception that is arguably applicable here -- for documents "central to plaintiffs' claim" -- does not apply. Id. (quoting Watterson, 987 F.2d at 3).

The employers offer no persuasive explanation for how the terms of the CBAs that the employers contend the District Court wrongly failed to consider could, on their own, meaningfully advance the preemption-based request for relief.  The employers therefore offer no account of how those CBAs are central to their claim.  The terms of those CBAs do not on their own suffice to show that those CBAs can determine the outcome of the Section 301 inquiry without regard to the actual ESTL claim brought, nor do the employers explain how the CBAs might do so.  For that reason, the preemption analysis in any actual enforcement action will necessarily depend on the specifics of the actual ESTL claim that is brought, even in a case in which one of the CBAs in question is

operative.  It is thus only once the specifics of an actual claim are known that it will be possible to determine both how that claim relates to the governing CBA and how that claim may implicate Section 301 preemption.  We therefore see no basis for reversing the District Court's ruling regarding the CBAs in question, even if we were to assume, favorably to the employers, that our review of the District Court's ruling in this regard is de novo.  See id. at 36 n.5.

## IV.

For these reasons, the suit is **dismissed** for lack of jurisdiction.